UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 6:11-mj-00108-MJS |
| Plaintiff, | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO SUPPRESS |
| v. | |
| RYAN "BEN" LEHMAN, | (ECF No. 9) |
| Defendant. | |

I. **PROCEDURAL HISTORY**

On August 7, 2011, Yosemite National Park Law Enforcement Rangers cited Defendant Ryan Lehman for misappropriation of property (i.e., retaining in his possession a key to the Yosemite National Park Volunteer Office where he previously had worked) and trespassing at the Volunteer Office, both in violation of 36 Code of Federal Regulation ("C.F.R.") § 2.31(a)(1), and for camping without a permit in violation of 36 C.F.R. § 2.10(b)(8). (ECF No. 1.)

On August 17, 2011, Defendant was arrested for possession of controlled

1

substances. (Psilocybin mushrooms and THC oil in violation of 21 U.S.C. § 844(a) and marijuana in violation of 36 C.F.R. § 2.35(b)(2)).

All six charges from both of these events were consolidated into an August 30, 2011, six count, First Amended Criminal Complaint in which the misappropriation was converted to a violation of 18 U.S.C. § 13, assimilating California Penal Code section 466 (unauthorized making of a key to a locked building). (ECF No. 3.)

Defendant was arraigned on, and pled "Not guilty" to, these charges on August 31, 2011.

On December 2, 2011, the Government filed a Second Amended Criminal Complaint identical to the First Amended Criminal Complaint except that the possession of Psilocybin mushrooms and THC oil were both charged as violations of 36 C.F.R. § 235(b)(2) instead of 21 U.S.C. § 844(a). (ECF No. 14.)

On November 21, 2011, Defendant filed this Motion to Suppress. (ECF No. 9.) The Government filed an opposition to the motion on December 1, 2011 (ECF No. 12) and Defendant filed a reply on December 8, 2011 (ECF No. 15). Counsel for both parties subsequently agreed at a status conference that no evidentiary hearing would be necessary to resolve the motion and it was submitted for decision

Defendant's Motion to Suppress Evidence is now before the Court for decision.

## II.    FACTS RELEVANT TO MOTION TO SUPPRESS[1]

At the time the original, August 7, 2011, citations were issued to Defendant, certain

---

[1] Except as otherwise noted herein, the parties do not seem to disagree as to the basic facts and chronology. In any event, the only sworn versions of the facts come from the government. Accordingly, unless otherwise indicated herein, the Court incorporates the core facts from the Declaration of Ranger Kupersmith attached to the government's Opposition to Defendant's Motion to Suppress. See ECF No. 13.

2

unspecified items of Defendant's personal property remained in a backpacker's locker in a Yosemite Valley campground. On August 16, 2011, that property was impounded by Law Enforcement Rangers. Later communications between Defendant and law enforcement led to a meeting to enable Defendant to recover this property. That meeting took place on August 17, 2011, when Defendant met Law Enforcement Ranger Shannon Kupersmith at a Yosemite Valley campground registration office.[2]

Once they met, it was agreed that Defendant could pull his car behind Ranger Kupersmith's to facilitate moving his property to his vehicle. Defendant and the ranger then began carrying boxes from the locker to Defendant's vehicle. While approaching an open back door of Defendant's vehicle to place a box on the back seat, Ranger Kupersmith "smelled the odor of unburned marijuana coming from within the car." The following sequence of events and communications then took place:

The ranger asked Defendant if there were drugs in the car. He said no.

The ranger said she could smell marijuana. Defendant said he just wanted to leave the Park without any trouble.

The ranger again said she smelled marijuana and asked where it was. Defendant said there might be marijuana in the car.

The ranger asked where the marijuana was. Defendant questioned whether it was in his best interest to answer.

---

[2] There is at least the suggestion of a dispute between the parties as to who caused the meeting and who determined where Defendant was to park his car when the two met. Resolution of those issues would have no effect on the Court's determination of the Motion to Suppress. Accordingly, no such resolution will be undertaken. To whatever extent, if any, Defendant may have felt directed to meet with Ranger Kupersmith or directed by her where to park once they met, there is no suggestion that at either point he felt he was not free to act otherwise or simply leave if he chose. In other words, there is no suggestion that Defendant was then detained and entitled to be advised of his Miranda rights. See Florida v Royer, 460 U.S. 491, 502 (1983).

3

The ranger said she was going to search the car because she could smell marijuana.

At Ranger Kupersmith's request, two other rangers, Carovano and Long, arrived to assist. Kupersmith and Carovano undertook to search Defendant's vehicle. Ranger Long stayed with Defendant. Ranger Kupersmith found in the center console a pipe containing what she concluded was a full bowl of marijuana.

Ranger Kupersmith asked where the rest of the marijuana was located. Defendant reportedly replied that it was in a black bag on the floor of the back seat. At about the same time, Ranger Carovano, who had been continuing the search, located a bag such as that described by Defendant. Ranger Kupersmith inspected the bag and reportedly found the controlled substances later described in the charging documents.

Ranger Kuprsmith then formally arrested Defendant and, after transporting him to the Yosemite Valley Holding facility, advised him of his <u>Miranda</u> rights.

### III. **DEFENDANT'S CLAIMS**

Defendant argues that the controlled substances allegedly found in his vehicle and his reported statements acknowledging the presence of controlled substances in his car should be suppressed. He contends that the warrantless search of his vehicle was not justified by any exception to the constitutional requirement that a warrant, based upon probable cause, first be issued. The items found were thus the result of an unconstitutional search and seizure. He also seeks to suppress statements made at the scene because he was not advised of his <u>Miranda</u> rights.

He contends that the products of the unconstitutional search - the controlled substances - are the proverbial "fruit of the poisonous tree" and may not be used against

him.

## IV. APPLICABLE LAW

### A. Vehicular Searches

The Fourth Amendment to the Constitution of the United States prohibits unreasonable searches and seizures. Searches conducted pursuant to a warrant issued on a finding of probable cause may generally be considered reasonable. Katz v. United States, 389 U.S. 347, 356-56 (1967). There are, however, exceptions excusing the need for a warrant to conduct a search. One exception allows a vehicle to be searched without a warrant if there exists probable cause sufficient to justify the issuance of a warrant. U.S. v. Ross, 456 U.S. 798 (1982). This vehicular exception to the warrant requirement exists because vehicles are mobile and can be quickly driven beyond the jurisdiction in which a warrant is sought and because there is a lesser expectation of privacy in vehicles traveling in the open public. California v. Carney, 471 U.S. 386, 390-93 (1985).

Once it is determined that there is probable cause to believe a vehicle contains contraband, a warrantless search of every part of that vehicle, and such contents as might conceal the object of the search, is justified. U.S. v. Ross, 456 U.S. at 825; Wyoming v. Houghton, 526 U.S. 295, 301 (1999).

The odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a warrantless search of that vehicle. Maryland v. Dyson, 527 U.S. 465, 467 (1999); U.S. v. Ojeda-Rodriquez, 502 F.2d 560, 561 (9th Cir. 1974) (Cert. Denied, 420 U.S. 910 (1975)); United States v. Barron, 472 F.2d 1215, 1217 (9th Cir. 1973); United States v. Chelgren, 2010 U.S. Dist. LEXIS 91818 (E.D. Cal. Aug. 9, 2010).

B.  **Miranda Warnings**

Miranda v. Arizona, 384 U.S. 436, 445 (1966) prohibits the use of statements against an individual if made while in custody "or otherwise deprived [by law enforcement] of his freedom of action in any significant way" unless procedural safeguards (Mirandizing) were first undertaken to ensure the individual's privilege against self-incrimination had been secured.

Not every law enforcement questioning of a suspect is custodial interrogation requiring advisement of Miranda rights. Berkermer v. McCarty, 468 U.S. 420 (1984). The determination of whether a restraint on freedom is such as to constitute the equivalent of a formal arrest is based upon consideration of how a reasonable person in the suspect's shoes would understand the situation, i.e., whether or not a reasonable individual would believe he was free to leave. There is no automatic seizure just because a uniformed law enforcement officer approaches an individual and asks him questions. Florida v. Royer, 460 U.S. 491, 497-502 (1983); Stansbury v. California, 511, U.S. 318, 322-24 (1994); U.S. v. Washington, 490 F. 3d 765, 770 (9th Cir. 2007). Five balancing factors frequently are considered in determining whether a reasonable person would believe he was free to leave: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. U.S. v. Kim, 292 F.3d 969, 973-78 (9th Cir. 2002).

///

///

///

6

## V. ANALYSIS

### A. Defendant's Statements

Defendant was not detained at the time of his initial exchanges with Ranger Kupersmith, i.e., before the other two rangers arrived and the vehicular search began. Defendant arrived of his own free will and participated in the exchange with Ranger Kupersmith of his own free will. He was still moving about on his own free will at least up until the time the other rangers arrived. Officer Kupersmith's initial questioning did not implicate the Fourth Amendment as Defendant had the choice of whether to engage himself in the conversation. Consideration of the five Kim factors suggest no seizure at any time prior to the arrival of the other two rangers. Defendant had not been summoned to the meeting (even if it had been Law Enforcement who initiated the meeting). He was confronted, very briefly and relatively mildly, with evidence suggesting possible guilt (i.e., the odor of marijuana reported to be coming from his car). There was nothing about the apparently very open and public location to suggest restraint or coercion. Under all the circumstances, the court finds nothing that had happened up to this point to suggest to a reasonable person that he was being detained so that law enforcement had a duty to Mirandize him. Certainly, the alleged detention here was far less so than that in Washington and no seizure was found to have occurred there. Washington, 490 F.3d at 770.

The Court is, however, unable to conclude similarly with regard to the events which occurred and statements that were made after the two other rangers arrived. At that point, Defendant's car was being searched by two law enforcement personnel. Obviously, he could not use it to leave. He apparently was escorted to a point about fifteen feet away

from the vehicle and Ranger Long, in his uniform, "stayed" with him. Before Ranger Kupersmith asked further questions of Defendant she had located evidence of marijuana in Defendant's vehicle. At that point in time a reasonable person would believe that he or she was not still free to leave. At that point in time, Defendant was effectively in custody and should have been advised of his Miranda rights before he was questioned further. He was not. Any statements made by him after he was in the company of Ranger Long shall be suppressed.

### B.  Search of Defendant's Automobile

Defendant contends that no non-warrant exception applied to the search of his car. Although acknowledging that the odor of marijuana emanating from a car can give rise to such an exception, he argues that the rangers could have and should have obtained a warrant because factors giving rise to the "automobile exception" were not present here: The car was stationary, not moving. The driver was not in the car. He did not have access to items in the car. A rear door was standing open. There was no concern for officer safety. Defendant also argues that in all cases in which the odor of marijuana was found sufficient to justify search some additional fact also contributed a motive for the search.

The government maintains that factors justifying the automobile exception existed here. The car had just been driven and, thus, obviously was operable. It was sitting on a public road. It was licensed. There was nothing to prevent Defendant, who was not in custody at the time the search was initiated, from getting into the car and driving outside the jurisdiction before a warrant could have been obtained. Ranger Kupersmith, a Law Enforcement Officer with prior experience with marijuana, has sworn under penalty of perjury that she smelled the odor of marijuana coming from the car.

These facts are set forth in the government's sworn Criminal complaint, in its opposition to this motion and the declaration of Ranger Kupersmith in support of that opposition. They are not genuinely disputed by the Defendant.[3] They are enough to justify the warrantless search of Defendant's vehicle and every portion of it and everything in it that could have held marijuana. They are enough to cause the Court to deny Defendant's motion to suppress evidence of controlled substances being found in the vehicle as a result of that search.

The odor of marijuana alone has been found to justify a vehicular search before. Chelgren, 2010 U.S. Dist. LEXIS 91818 (E.D. Cal. Aug. 9, 2010). Although the Chelgren search ensued from a traffic stop, it was not the traffic violation which gave the officer probable cause to search the vehicle, but rather the smell of marijuana detected after the stop gave probable cause for the search. Id. at *7-12. Moreover, according to Barron, even if other facts giving rise to search existed in other cases, "the fact that an agent familiar with the odor of marijuana, smelled such an odor emanating from the automobile . . . alone was sufficient to constitute probable cause for a subsequent search for marijuana." Barron, 472 F.2d at 1217. There is no requirement that the odor of marijuana be coupled with other cause to justify a lawful vehicular search.

The controlled substances reportedly found in Defendant's automobile were the product of a search which was lawfully conducted independently of any comments from Defendant. The only statement by Defendant prior to Ranger Kupersmith beginning the

---

[3] Defendant's papers implicitly suggest that Ranger Kupersmith did not specifically identify the car as the source of the marijuana odor, but rather just said she smelled marijuana as she approached the car. However, considering all the circumstances, it is clear she concluded the odor was coming from the car. The sworn Criminal Complaint so attests.

9

search which could be said to have been incriminating or to suggest the presence of marijuana was that there "might be" marijuana in the car. As noted, Defendant was not then in custody, but even if he had been and had made the statement without being advised of his Miranda rights, it was equivocal at best and Ranger Kupersmith already had a sufficient constitutional basis for initiating the search. Although the Court finds that Defendant was in custody at the time he advised that the black bag contained drugs, a constitutionally acceptable search already was underway and it appears Ranger Carovano began searching the bag at about the same time, and wholly independently, of Defendant's statement.

The Court finds that the controlled substances reportedly found by the Law Enforcement Rangers during the course of their search of Defendant's vehicle were found as the result of a lawful search and independently of any statements attributed to Defendant at the scene.

## VI. CONCLUSION AND ORDER

Accordingly, Defendant's motion to suppress is granted in part and denied in part. The motion to suppress evidence of the alleged illegal drugs found in the search of Defendant's vehicle is **DENIED**. The motion to suppress evidence of incriminating statements made to law enforcement rangers is **GRANTED.**


IT IS SO ORDERED.

Dated: February 28, 2012     /s/ *Michael J. Seng*
                                                      UNITED STATES MAGISTRATE JUDGE